UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 5379 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| OFFICER FOSTER, OFFICER SURANE, OFFICER COOPER, OFFICER WHITE, and OFFICER BRYAN, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

James Johnson sues five Cook County Jail correctional officers under 42 U.S.C. § 1983 for allegedly subjecting him to inhumane conditions in his jail cell and failing to provide him medical treatment to address the injuries those conditions caused. Doc. 81. Other than Defendant Officer Bryan, who has not been served, Defendants move under Civil Rule 12(b)(6) to dismiss the operative complaint. Doc. 82. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Johnson's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Johnson as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the

facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Johnson identifies as "a member of the transgender community." Doc. 81 at ¶ 4. On approximately July 1, 2017, Johnson was placed in a cell at Cook County Jail as a pretrial detainee. *Id*. at ¶¶ 4, 11. He quickly noticed that the cell's toilet was not functioning and "filled with feces," causing the cell to "smell[] terribly." *Id*. at ¶ 12. Johnson informed Defendants about the issue and asked that they repair the toilet, but the toilet was not fixed for two weeks. *Id*. at ¶¶ 14-15, 19. Defendants' decision to confine Johnson to the filthy cell was due to their animus against him for identifying as transgender. *Id*. at ¶¶ 46-47.

During that two-week period, Johnson's only access to a functioning toilet came once per day, when he was allowed to use the Jail's dayroom area. *Id*. at ¶¶ 16-17. This meant that Johnson had to go 22 hours daily without toilet access, even though several nearby cells with functioning toilets were available. *Id*. at ¶¶ 17-18. Eventually, Johnson filed a formal written grievance, and the toilet was repaired two days later. *Id*. at ¶¶ 20-21.

As a result of having "to endure the truly vile sight and smell of the broken and overfilled toilet" and "hold [his] urine and feces for hours on end," Johnson developed several physical and psychological issues, including "permanent stomach problems," "difficulty sleeping," and "severe mental anxiety regarding operability of the toilets in cells." *Id*. at ¶¶ 22-25. Johnson "repeatedly" asked Defendants for medical attention, but they refused to provide him with medical treatment. *Id*. at ¶¶ 55-56.

## Discussion

The operative complaint—which is the first amended complaint, and the first prepared by able recruited counsel—brings a conditions-of-confinement claim, an equal protection claim, and

an inadequate medical care claim. Doc. 81. Defendants move to dismiss all three claims. Doc. 82.

I.  **Conditions-of-Confinement Claim**

"Pretrial detainees may assert a conditions-of-confinement claim under the Fourteenth Amendment's Due Process Clause" if subjected to "adverse conditions that deny the minimal civilized measure of life's necessities." *Hardeman v. Curran*, 933 F.3d 816, 821-22 (7th Cir. 2019) (internal quotation marks omitted). A detainee can state such a claim by alleging that: (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly" as to the conditions of the detainee's confinement; and (2) the defendant's conduct was objectively unreasonable. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018). Unlike in the Eighth Amendment context, deliberate indifference—the defendant's subjective awareness that his conduct was unreasonable—is not required. *See id.* at 350-54.

Defendants concede that "access to a working toilet is a civilized measure of life's necessities." Doc. 82 at 4; *see Hardeman*, 933 F.3d at 823-24 ("[A] defendant cannot … force a prisoner permanently to live surrounded by h[is] own excrement and that of others."). Still, they argue, Johnson fails to state a conditions-of-confinement claim because "the conditions were not sufficiently serious." Doc. 82 at 6; *see also id.* at 5 ("[T]he malfunction of in-cell plumbing generally do[es] not rise to the level of a constitutional violation."). According to Defendants, the facts that Johnson had daily access to a toilet, that the situation with his cell's toilet lasted only two weeks, and that the toilet was fixed two days after he submitted a written grievance all suggest that there was no constitutional deprivation. *Id.* at 6-7.

That argument fails to persuade. Indeed, Defendants defeat their own argument by resting in on their belief that prisoners, as a result of their crimes against society, must accept less-than-ideal living conditions. *See id.* at 5 ("[R]outine discomfort is part of the penalty that

3

prisoners pay for their offenses against society.") (quoting *Perez v. Hardy*, 2015 WL 5081355, at *5 (N.D. Ill. Aug. 27, 2015)). Johnson was a pretrial detainee at the time, so the argument that the poor conditions would have served a punitive purpose is essentially a concession that they were unconstitutional for a pretrial detainee. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all … .").

In any event, an allegation that a detainee was forced to spend 22 hours per day for two weeks not only without access to a toilet, but surrounded by feces, states a due process claim. *See Hardeman*, 933 F.3d at 820 (holding that "be[ing] surrounded by [one's] own and others' excrement" is a "condition[] of confinement that courts have long recognized as [a] potential constitutional violation[]"); *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (holding that a prisoner stated an Eighth Amendment claim by "alleg[ing] that for two weeks prison guards, without explanation, ignored his requests for basic cleaning supplies while he was exposed to a combination of a heavy roach-infestation, filth, and human waste"); *Thomas v. McCoy*, 2020 WL 247464, at *4-5 (N.D. Ill. Jan. 16, 2020) (holding that a prisoner's conditions-of-confinement claim survived summary judgment where "he was allowed to use the toilet outside of his cell [only] seven to ten times in the ten-day period in which his toilet was broken, in addition to any times he was able to use the bathroom during his dayroom time"). And the fact that the situation was remediated after Johnson filed a written grievance is irrelevant, as the complaint alleges that Defendants were aware of the problem long before that point. Doc. 81 at ¶ 14 ("Specifically, and on numerous occasions, [Johnson] informed Defendants that the toilet in his cell was broken and asked that it be fixed.").

Opposing this conclusion, Defendants point out that because prison officials brought Johnson to the dayroom area once per day, "a reasonable inference can be drawn that officers

4

were available if [Johnson] requested additional bathroom access as needed." Doc. 82 at 6. They also maintain that the somewhat quick response to Johnson's written grievance "demonstrates a prompt response to the alleged issue." *Ibid*. The former argument improperly asks the court to draw an inference in Defendants' favor at the motion to dismiss stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [his] favor."). The latter argument might have had some force if the complaint alleged that it was *Defendants* who promptly responded to Johnson's written grievance, but the complaint does not say to whom the grievance was addressed or who responded to it. Doc. 81 at ¶ 20. Perhaps another prison official responded, and if so, that fact would cut in Johnson's favor, not Defendants', as it would suggest that the problem could have been addressed earlier.

Finally, Defendants argue that they could not have played any role in the alleged deprivation because the complaint alleges that they all worked in Division 8 of the Jail, while Johnson's cell was in Division 10. Doc. 82 at 7; *see* Doc. 81 at ¶¶ 5-11; *see also* Doc. 82 at 12 (making the same argument as to Johnson's inadequate medical care claim). But regardless of who was in what division of the Jail, the complaint clearly alleges that Defendants placed Johnson in the filthy cell, kept him there, and then deprived him of medical care. And there is nothing in the complaint suggesting that an officer in Division 8 could not play a role in the conditions of confinement (or medical care) of a detainee in Division 10. At the pleading stage, the court must take the complaint at face value and may not draw inferences against Johnson. *See Tamayo*, 526 F.3d at 1081.

5

## II. Equal Protection Claim

Johnson's equal protection claim alleges that Defendants placed him in the filthy cell and kept him confined there because he identifies as transgender. Doc. 81 at ¶¶ 45-47. The Seventh Circuit has not yet decided whether transgender people are a protected class for Fourteenth Amendment purposes. *See Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) ("[T]his case does not require us to reach the question of whether transgender status is per se entitled to heightened scrutiny."); *see also Tay v. Dennison*, 2020 WL 2104962, at *17 (S.D. Ill. May 1, 2020) ("Neither the Seventh Circuit nor the Supreme Court has determined whether transgender individuals constitute a protected class."). But even without heightened scrutiny, a jail official violates a detainee's equal protection rights by "intentionally treat[ing] [him] differently from others similarly situated" if "there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). That is precisely what Johnson alleges here, as a detainee's identification as transgender is not a rational reason for subjecting him to a filthy cell. Doc. 81 at ¶ 45 (alleging that in depriving Johnson of a working toilet, Defendants treated him differently from detainees who do not identify as transgender).

Defendants contend that Johnson's equal protection claim is barred by the statute of limitations. According to Defendants, the claim first appeared in the first amended complaint, which was filed on June 2, 2020, well over two years after the July 2017 episode giving rise to this suit. *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[W]e look to the law of the state in which the personal injury occurred to determine the length of the [§ 1983] statute of limitations. Under Illinois law, a plaintiff must bring a personal injury action within

6

two years after its accrual.") (citation omitted). That argument fails, as the claim relates back to Johnson's original complaint, which was filed within two years of July 2017.

Civil Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006). Defendants concede that the equal protection claim "is premised on [Johnson's] identification as transgender" in July 2017, when he lacked access to a working toilet. Doc. 82 at 13. In other words, the claim arises out of the same incident giving rise to the conditions-of-confinement claim, which was brought in Johnson's original (*pro se*) complaint. Doc. 1 at 5-7. The equal protection claim thus relates back to the original complaint, and because Johnson filed that complaint in August 2018—well within two years of the complained-of conduct—the claim is timely. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016) ("The original complaint, which described [the plaintiff's] arrest and the subsequent searches of his person and business, was sufficient to put the defendant officers on notice that they would have to defend against all claims arising out of this encounter … .").

### III. Inadequate Medical Care Claim

Johnson's inadequate medical care claim is really two subclaims. The first is that after Johnson was deprived of toilet access for 22 hours per day, Defendants denied him medical care even though he "repeatedly requested medical attention from [them], both through written letters and grievance reports as well as through face-to-face communication." Doc. 81 at ¶¶ 53-55. The

7

second claim sounds in the register of a *Monell* claim, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), alleging that Defendants have a "custom, policy, or practice" to show "deliberate indifference to the medical needs of pre-trial detainees at the Cook County Department of Corrections" and to "provide inadequate medical care and treatment to pre-trial detainees" there. Doc. 81 at ¶¶ 57-58.

As to the second claim, "*Monell* claims focus on institutional behavior; for this reason, misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution as a whole." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). But the complaint alleges only that Defendants—five specific officers—have a "custom, policy, or practice" to deny adequate medical care to pretrial detainees, Doc. 81 at ¶¶ 57-58, and says nothing about broader policies or practices at Cook County Jail. Moreover, the complaint says nothing about how any other pretrial detainee was affected by the alleged policies or practices. *See Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("To prove an official policy, custom, or practice within the meaning of *Monell*, [a plaintiff] must show more than the deficiencies specific to his own experience … ."). The *Monell* claim is therefore dismissed.

As to the inadequate medical care claim against Defendants in their individual capacities, Defendants argue that the complaint's allegations "are extremely vague and fail to allege any specific conduct on behalf of each Defendant." Doc. 82 at 11. That is incorrect. The complaint alleges that Johnson had "a serious medical need resulting from the two week confinement to a cell with a broken toilet," that he "repeatedly requested medical attention from Defendants," and that Defendants "[f]ail[ed] to provide" the requested attention. Doc. 81 at ¶¶ 54-56. That suffices to state an inadequate medical care claim under the Due Process Clause. *See Miranda*,

8

900 F.3d at 353-54 (holding that a pretrial detainee has an inadequate medical care claim if the defendants' "deliberate failure to act was objectively unreasonable"). Defendants correctly observe that "the law encourages non-medical … and administrative personnel at jails and prisons to defer to the professional medical judgment of the physicians and nurses treating the prisoners in their care without fear of liability for doing so," Doc. 82 at 11-12 (quoting *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)), but a corrections officer may not *ignore* a detainee's requests for care. *See Miranda*, 900 F.3d at 353-54 (holding that the defendants' "intentional and knowing inaction" could support liability); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) ("A prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and … fails to act in disregard of that risk.").

## Conclusion

Defendants' motion to dismiss is granted in part and denied in part. Johnson's conditions-of-confinement and equal protection claims may proceed. Johnson's inadequate medical care claim is dismissed insofar as it purports to state a *Monell* claim against Defendants in their official capacities, but it may proceed against Defendants in their individual capacities.

Because the amended complaint is Johnson's first counseled complaint, the partial dismissal is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Johnson has until October 19, 2020 to file a second amended complaint. If he does not do so, the dismissal of the inadequate medical care claim against Defendants in their official capacities will convert automatically to a dismissal with prejudice, and Defendants (those who have been served) shall answer the surviving portions of the amended complaint by

9

November 2, 2020.  If Johnson files a second amended complaint, Defendants shall file their responsive pleading by November 2, 2020.

October 5, 2020

_____
United States District Judge